## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANCINE DAVIS, Now known as Francine Adams, Individually and as Parent and Natural Guardian of AUSTIN DAVIS,** | : | |
| | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:15-1986** |
| | : | |
| **v.** | : | **(JUDGE MANNION)** |
| **NORTHEAST EDUCATIONAL INTERMEDIATE UNIT 19 (NEIU), LAKELAND SCHOOL DISTRICT, and CRISTA PARRY,** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Francine Davis, now known as Francine Adams, individually and as parent and natural guardian of Austin Davis, filed this action against defendants Northeast Educational Unit 19 ("NEIU"), Lakeland School District ("LSD"), and Crista Parry ("Parry") alleging violations of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution and violations of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504"), in addition to various state law claims against defendant Parry individually. The plaintiff's action arises out of incidents that occurred while her son Austin was enrolled as a student in a special education program

run by LSD and NEIU. Defendant Parry was Austin's occupational therapist while Austin was a student of NEIU and LSD.

Currently before the court are NEIU's and Parry's second motion to dismiss, (Doc. 16), and defendant LSD's second motion to dismiss, (Doc. 15). Both motions were filed pursuant to Federal Rule of Civil Procedure 12(b)(6) alleging that plaintiff has failed to state a claim and pursuant to Federal Rule of Civil Procedure 12(b)(1) alleging that this court lacks subject matter jurisdiction over the plaintiff's claims. The defendants' jurisdictional argument is based on the plaintiff's failure to exhaust administrative remedies provided by the Individuals with Disabilities Educations Act, 20 U.S.C. §§1400–1482 ("IDEA"). For reasons further discussed below, the defendants' motions to dismiss are **GRANTED**.

## I.    **FACTUAL BACKGROUND**[1]

Plaintiff's son, Austin, suffers from various disabilities including developmental delay, a seizure disorder, the inability to use his legs rendering him wheelchair bound, legal blindness in both eyes, and speech difficulties. His physical disabilities have also effected his development in the area of social interaction. Austin is low functioning due to his emotional, verbal,

---

[1] The facts alleged in the plaintiff's complaint are accepted as true in considering the defendants' motions to dismiss. *See Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014); *Fleischer v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012).

physical, and visual impairments. NEIU is a regional educational services agency that is part of the public school system in Lackawanna County, Pennsylvania. LSD has a contract with NEIU to provide services for special needs students in the school district. Defendant Parry was an occupational therapist hired by NEIU to serve the school district.

From September 2007 through June 2008, Austin was enrolled in LSD and was placed in their special education and life skill division. Parry was Austin's occupational therapist. While working with Austin, Parry attempted to redirect Austin's behavior by using techniques designed to establish negative associations with specific behaviors. These disciplinary techniques included laying Austin down backwards in his wheelchair as a form of restraint, leaving his torso lying flat on the ground and his legs dangling above him in the air; yelling at Austin; leaving him in a classroom alone while prostrate in his wheelchair with all the lights turned off; refusing to allow Austin to eat his meals; and forcing Austin to eat his meals cold. These actions were designed as a source of punishment. Throughout this time, the plaintiff began seeing negative, developmental changes in her son's behavior, including screaming that he hated Parry, becoming afraid of Parry, increased seizures, and further speech regression.

On or about October 26, 2007, the school's nurse, Tamara Dougher Vassil, witnessed Parry using some of these aversive techniques on Austin. Nurse Vassil informed her supervisor, members of NEIU, the principal, and

3

the superintendent of LSD about what she had witnessed. On November 2, 2007, a meeting was organized with the plaintiff, the plaintiff's husband, Austin, Parry, the special education coordinator, the building principal, and the school's therapist to discuss what nurse Vassil had seen. Parry admitted to members of NEIU that she had engaged in these behavioral techniques with Austin on repeated occasions prior to October 26, 2007, including laying him down prostrate in his wheelchair while he was still in it. She also stated that she believed these techniques were acceptable. After this meeting, Parry was permitted to continue working with Austin in the special education program.

## II.    PROCEDURAL BACKGROUND

The plaintiff first filed suit in the Court of Common Pleas of Lackawanna County, instituting her action with a writ of summons filed on November 19, 2013 and filing her state complaint on September 10, 2015. The plaintiff's state court complaint alleged violations of the IDEA, Section 504, the Fourteenth Amendment, willful misconduct and punitive damages, and claims of assault, battery, intentional infliction of emotional distress ("IIED"), and breach of fiduciary duty against Parry individually. On October 9, 2015, the defendants filed a Notice of Removal in this court that was docketed on October 13, 2015, (Doc. 1).

The defendants first filed motions to dismiss on November 6, 2016, (Docs. 8, 9). In response, on November 25, 2016, the plaintiff filed an

Amended Complaint, (Doc. 13). The plaintiff's Amended Complaint contained only five counts, the Fourteenth Amendment claim (Count I), the Section 504 claim (Count V), and the assault and battery (Count II), IIED (Count III), and breach of fiduciary duty (Count IV) claims against Parry. The Amended Complaint sought compensatory and punitive damages on all counts except the plaintiff's Section 504 claim, in addition to any other relief this court deemed appropriate. On November 30, 2015, the defendants' pending motions were dismissed without prejudice in light of the plaintiff's Amended Complaint, (*See* Doc. 14).

On December 9, 2015, the defendants filed the current motions to dismiss, (Docs. 15, 16). Their motions challenge this court's subject matter jurisdiction over the plaintiff's federal law claims pursuant to Rule 12(b)(1). Their motions also seek dismissal on Rule 12(b)(6) grounds alleging that plaintiff has failed to state a claim upon which relief can be granted. Both motions have been fully briefed and are now ripe for disposition.

## III.   STANDARDS OF REVIEW

### A. Rule 12(b)(1)

The defendants' motions challenge this court's subject matter jurisdiction under the Rule 12(b)(1) because the plaintiff failed to exhaust the

administrative remedies available to her under the IDEA.[2] "A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." *Vieth v. Pennsylvania*, 188 F. Supp. 2d 532, 537 (M.D. Pa. 2002). The failure to exhaust administrative remedies is a jurisdictional issue and the appropriate device to raise this issue is a motion to dismiss under Rule 12(b)(1). *See Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014). A Rule 12(b)(1) dismissal is not a judgment on the merits, but only a determination that the court lacks the authority to hear the case. *Swope v. Central York Sch. Dist.*, 796 F. Supp. 2d 592, 599 (M.D. Pa. 2011). Because the district court is a court of limited jurisdiction, the burden of establishing jurisdiction always rests upon the party asserting it. *See Kokkonen v. Guardian Life. Ins. Co. of America*, 511 U.S. 375, 377 (1994).

An attack on the court's jurisdiction may be either "facial" or "factual" and the "distinction determines how the pleading must be reviewed." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack tests the sufficiency of the pleadings, while a factual attack challenges whether a plaintiff's claims fail to comport factually with

---

[2] "When a party moves to dismiss under more than one Rule 12 ground, the Court must first consider the Rule 12(b)(1) challenge, 'because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot.'" *A.D. v. Haddon Heights Bd. of Educ.*,90 F. Supp. 3d 326, 334 (D.N.J. 2015) (quoting *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)).

jurisdictional prerequisites. *S.D. v. Haddon Heights Bd. of Educ.*, No. 15–1804, __ F.3d __, 2016 WL 4394536, at *3 n. 5 (3d Cir. Aug. 18, 2016).

An attack on jurisdiction based on a failure to exhaust remedies that is filed prior to answering the complaint is "by definition, a facial attack" on the pleadings as the defendant has yet to offer any competing facts. *Id.* Reviewing such an attack, a district court must accept the allegations stated in a plaintiff's complaint and review "only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (internal quotation marks omitted).

### A. Rule 12(b)(6)

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. In reviewing such a motion, the court must "accept all factual allegations as true, construe the [c]omplaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the [c]omplaint, the plaintiff may be entitled to relief." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (internal quotation marks and citation omitted). It is the moving party that bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Dismissal on Rule 12(b)(6) grounds is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead

"enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The plaintiff must be able to "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

## IV.   DISCUSSION

The defendants have all moved to dismiss the plaintiff's federal claims on the ground that the plaintiff failed to exhaust the administrative remedies available to her under the IDEA.[3] The plaintiff's Amended Complaint does not specifically contain an IDEA claim; this claim was removed from the plaintiff's original complaint. However, the defendants argue that the plaintiff's remaining federal claims are so closely related to the IDEA scheme that exhaustion is still required before jurisdiction can be conferred on this court.

---

[3] The parties do not dispute that the plaintiff did not exhaust administrative remedies under the IDEA. Nor do the parties dispute that "'[i]n the normal [IDEA] case, exhausting the IDEA's administrative process is required in order for the statute to grant subject matter jurisdiction to the district court.'" *Batchelor*, 759 F.3d at 272 (quoting *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994). The sole jurisdictional issue before this court is whether the plaintiff's claims, as amended, continue to fall within the IDEA scheme and, therefore, require exhaustion.

The plaintiff argues that her claims are non-educational in nature and the relief requested is not available under the IDEA; thus, the IDEA does not apply. This court agrees that the plaintiff's amended federal claims relate closely to the IDEA scheme and that the plaintiff was required to exhaust the IDEA's administrative remedies before seeking relief in this court.

## A.    The IDEA Statutory and Administrative Scheme

The IDEA was enacted, in part, to "ensure that all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. §1400(d)(1)(A). The IDEA conditions a state's receipt of federal funds for special education programs on its implementation of "policies and procedures to ensure that . . . [a FAPE] is available to all children with disabilities." 20 U.S.C. §1412(a)(1)(A). As a recipient of federal funds, Pennsylvania has adopted the IDEA. *See* 22 Pa. Code §14.101.

"The 'primary vehicle' for implementing a FAPE is the Individualized Educational Program [("IEP")]." *Melissa S. v. Sch. Dist. of Pittsburgh*, 183 F. App'x 184, 186–87 (3d Cir. 2006). "The IEP consists of a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive." *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 173 (3d Cir.1988) (citing 30 C.F.R. §300.347).

9

States must also set up procedures under the IDEA to ensure that children with disabilities and their parents are afforded a due process hearing concerning "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. §1415(b)(6)(A). Exhaustion of the administrative remedies available under the IDEA "serves the purpose of developing the record for review on appeal, encouraging parents and the local school district to work together[,] . . . and allowing the education agencies to apply their expertise and correct their own errors." *Batchelor*, 759 F.3d  at 275 (internal citations omitted). After exhausting the state's administrative remedy, parties unsatisfied with the result may seek judicial review in federal court. *Id*. §1415(i)(2)(A). A federal court may then grant "such relief as [it] determines is appropriate." Id. §1415(i)(2)(c)).

The IDEA requires exhaustion not only in actions brought directly under the IDEA, but also "in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA." *Id.* at 272. This is directly in accordance with Section 1415(l) of the IDEA statute. Section 1415(l) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. §12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. §791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under

> subsections (f) and (g) shall be exhausted to the
> same extent as would be required had the action
> been brought under this subchapter.

20 U.S.C. §1415(l). "This provision bars plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under [the] IDEA and repackaging them as claims under some other statute." *Batchelor*, 759 F.3d at 272. To avoid this result, there is a "strong policy . . . requiring exhaustion of remedies available under the IDEA." *Id*. at 275 (citing *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994)).

The Third Circuit Court of Appeals has provided much guidance on how to determine if a non-IDEA claim falls within the IDEA scheme and requires exhaustion. This determination requires that a court "evaluate the nature of the plaintiff's claims and the theory behind the grievance." *Haddon Heights Bd. of Educ.*, 2016 WL 4394536, at *4 (internal quotation marks and citation omitted). "[T]he ultimate question is whether a non-IDEA claim falls within the scope of a complaint contemplated by the IDEA" and "whether the parties could have asserted the claims under IDEA." *Id*. (quoting *Batchelor*, 759 F.3d at 273). These contemplated claims include those that "relate to the identification, evaluation, or educational placement of the child, or the provision of a free and appropriate public education [(FAPE)] to such child." *Id*. (quoting 20 U.S.C. §1415(b)(6)(A)).

In *Batchelor*, the Third Circuit found that the plaintiffs' American's with Disability Act ("ADA") claim alleging retaliation and Section 504 discrimination claim fell within the IDEA administrative scheme. 759 F.3d at 273. The court found that the plaintiffs' claims "palpably 'relate[d]'" to the FAPE provision in IDEA and were educational in nature. *Id*. at 274, 278. This was, in part, because of the plaintiffs' allegations that the defendant school district deprived the minor plaintiff of a FAPE and caused great harm to his educational achievement and well being. *Id*. The court was also guided by the "strong policy" requiring exhaustion of the IDEA remedies. *Id*. at 275.

The court in *Batchelor* was not persuaded by the argument that exhaustion was not required because the complaint solely requested compensatory and punitive money relief. *Id*. at 276. The court explained that the remedies sought did not "dictate the applicability of the IDEA to [the plaintiffs'] claims." *Id*. at 277. Instead, "the [d]istrict [c]ourt is not constrained in the relief it is authorized to grant by the remedies sought in the . . . [c]omplaint." *Id*. at 276 (citing  R. Civ. P. 54(c)).

More recently, in *Haddon Heights*, the Third Circuit reaffirmed its findings in *Batchelor* and found that discrimination claims brought under the ADA and Section 504 fell within the IDEA scheme. Similar to the court's finding in *Batchelor*, the Third Circuit found that the plaintiffs' claims in *Haddon Heights* were, ultimately, educational in nature based on allegations that the minor plaintiff was denied educational opportunities and was falling

12

behind in the school's curriculum. *Id*. at \*6. The court found that these allegations fell within the IDEA's guarantee of a FAPE and that there was a "logical path to be drawn" from the plaintiffs' claims to the FAPE provision. *Id*. (quoting *Batchelor*, 759 F.3d at 274).

## B. The Plaintiff's Federal Claims

The plaintiff's Amended Complaint contains two federal claims, a constitutional claim under the Fourteenth Amendment (Count I) and a Section 504 discrimination claim (Count V), (*See* Doc. 13). The basis for both of these claims comes from defendant Parry's use of aversive disciplinary techniques on Austin, (*See* Doc. 13, at ¶ 27). Both of the plaintiff's federal claims stem from the same facts, relate to the IDEA's FAPE provision, and require exhaustion.

### i.    The Plaintiff's Section 504 Claim (Count V)

The plaintiff's Section 504 claim clearly falls within the ambit of IDEA's administrative scheme. Section 504 of the Rehabilitation Act "prohibits the discrimination against the disabled in federally funded programs." *Colon v. Colonial Intermediate Unit 20,* 443 F. Supp. 2d 659, 665 (M.D. Pa. 2006). The IDEA and Section 504 share equivalent requirements. "The IDEA provides an affirmative duty to provide education, whereas the Rehabilitation Act prohibits discrimination against the disabled." *Id*. (citing *W.B. v. Matula*, 67 F.3d 484, 492–93 (3d Cir.1995), abrogated on other grounds by *A.W. v. Jersey City Pub. Schs*., 486 F.3d 791, 803–04 (3d Cir. 2007)).

The plaintiff's Section 504 claim is grounded in defendant Parry's use of aversive behavioral techniques that were not approved by Pennsylvania's implementation of the IDEA administrative scheme. The plaintiff's Amended Complaint states that these techniques are "specifically excluded from Title 22 of the Pennsylvania State Codes (sic) list of positive approaches to behavior management," (Doc. 13, at ¶ 27). The plaintiff cites directly to Pennsylvania's administrative code implementing the IDEA for this proposition, (*Id*. citing 22 Pa. Code §14.133(e)). *See also* 22 Pa. Code §14.102. The plaintiff's complaint also alleges that defendant Parry "should have caused a meeting of [Austin's] IEP team to review the current IEP for the appropriateness and effectiveness of [Parry's] course of action" prior to using the technique of tipping Austin over in his wheelchair as a form of restraint, (*Id*. at ¶ 30). This allegation clearly ties Parry's misconduct to Austin's IEP as provided for under the IDEA.

Similar to the plaintiffs in *Batchelor* and *Haddon*, the plaintiff alleges in her Amended Complaint that Parry's behavioral techniques began producing "pronounced changes in [Austin's] behavior, specifically trying (sic) a trend of regression as his development was taking place[, including] . . . . speech regression," (Doc. 13 at ¶ 44). *Cf. Haddon Heights Bd. of Educ.*, 2016 WL 4394536, at *6 (allegations that the minor plaintiff was denied educational opportunities and was falling behind in the school's curriculum deemed educational in nature and within the IDEA scheme); *Batchelor*, 759 F.3d  at

14

274, 278 (allegations that the defendant school district deprived minor plaintiff of a FAPE and caused great harm to his educational achievement and well being deemed educational in nature and within the IDEA scheme). Austin's developmental regression is inexorably linked to the development goals under his IEP.

Finally, reviewing the Section 504 claim directly under Count V of the Amended Complaint, the plaintiff states that the defendants failed to provide Austin "with a *safe and appropriate education atmosphere*," (Doc. 13, at ¶ 86) (emphasis added). This language aligns directly within the IDEA's primary purpose to provide all disabled children with a free appropriate public education (FAPE). Similar to the plaintiffs in *Batchelor* and *Haddon*, the plaintiff's Section 504 claim forms a "logical path" to the FAPE provision in the IDEA. The ultimate theory behind the claim is the denial of a FAPE to Austin based on Parry's usage of improper disciplinary techniques. The plaintiff's claim presents the exact kind of issue where an education agency's expertise would be most valuable and useful for this court when asked to evaluate the legality of those techniques. *See Batchelor*, 759 F.3d at 275. As such, the plaintiff's Section 504 claim must be exhausted using the IDEA's administrative process before seeking review in this court. *Batchelor*, 759 F.3d at 274.

ii.   The Plaintiff's Fourteenth Amendment Claim (Count I)

The plaintiff also brings a constitutional claim against the defendants alleging that "[t]he [d]efendants conduct in failing to provide [Austin] with a free appropriate public education constitute[d] unlawful discrimination . . . in violation of the Equal Protection Clause of the 14th Amendment and in violation of due process," (Doc. 13, at ¶ 52).[4] This allegation is, like the Section 504 claim, based on defendant Parry's usage of aversive behavioral techniques and LSD's and NEIU's failure to remove Austin from Parry's care and oversight after learning of these techniques. Again, these failures are alleged to have led to Austin's developmental regression.

_____

[4] The plaintiff's Amended Complaint does not provide much depth regarding her constitutional claims. It does not state whether the plaintiff alleges violations of procedural or substantive due process or both. Nor does it explain what right it seeks to invoke as a basis for the due process claim. It also does not provide the class of persons the plaintiff seeks to invoke for her Equal Protection claim.

In her reply briefs to the defendants' motions, the plaintiff explains that she has alleged a "class of one" Equal Protection claim and a substantive due process claim, (Docs. 24, 25). *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000) (holding that "class of one" claims are valid under the Equal Protection Clause where the plaintiff has alleged intentional, differential treatment that is irrational and wholly arbitrary). However, as stated in the Amended Complaint, the plaintiff's claim of constitutional violations is based on a failure to provide Austin with a FAPE. Stated as such, the plaintiff's constitutional claim is a repackaged IDEA claim requiring exhaustion. Because this court decides the defendants' motions on jurisdictional grounds, this court need not decide whether the plaintiff's vague constitutional claims, if interpreted to allege a "class of one" Equal Protection claim and a substantive due process claim, are sufficient to survive a motion to dismiss under Rule 12(b)(6).

The plaintiff's constitutional claims, like the Section 504 claim, clearly fall within the IDEA's FAPE provision and require exhaustion. *See* 20 U.S.C. §1415(l) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the *Constitution* . . . except that before the filing of a civil action . . . the procedures under subsections (f) and (g) shall be exhausted") (emphasis added). Evaluating the "theory behind the grievance," there is no factual difference between the plaintiff's constitutional claims, the Section 504 claim, and an IDEA claim that could have been asserted using the administrative process. *Batchelor*, 759 F.3d at 276 (quoting *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.*, 98 F.3d 989, 992 (7th Cir. 1996)).

The plaintiff's constitutional claims, as alleged, fall clearly under the IDEA's FAPE provision and, therefore, require exhaustion under the IDEA administrative scheme. Similar conclusions have been reached by other courts as it relates to repackaged constitutional claims. *See*, *e.g.*, *Rose v. Yeaw*, 214 F.3d 206 (1st Cir. 2000) (affirming district court's dismissal of the plaintiffs' First and Fourteenth Amendment claims based on a failure to exhaust administrative remedies); *Blanck v. Exeter Sch. Dist.*, No. Civ.A.01-1402, 2002 WL 31247983 (E.D. Pa. Oct. 2, 2002) (dismissing a plaintiff's First, Fourth, and Fourteenth Amendment claims based on a failure to exhaust administrative remedies). As explained by the Third Circuit in *Batchelor*, the plaintiff cannot "circumvent[] [the] IDEA's exhaustion

requirement by taking claims that could have been brought under [the] IDEA and repackaging them as [non-IDEA] claims." 759 F.3d at 272.

### C.   The IDEA Exhaustion Exceptions

Although several exceptions exist to the IDEA's administrative exhaustion requirement, none of them apply here. The Third Circuit has recognized exceptions to the exhaustion requirement where: (1) exhaustion would be futile; (2) the issue presented is purely a legal question; (3) where the administrative agency cannot grant relief; and (4) where exhaustion would cause severe or irreparable harm (an emergency situation). *Komninos*, 13 F.3d at 778. As it relates to the third exception, however, the Third Circuit in *Batchelor* clarified that the relief sought does "not dictate the applicability of the IDEA." 759 F.3d at 277. "[T]he [d]istrict [c]ourt is not constrained in the relief it is authorized to grant by the remedies sought in the [plaintiff's] [c]omplaint." *Id*. at 276. Instead, it is the nature of the claims and the governing law that determines the relief. *Id*. (citing Fed. R. Civ. P. 54(c))

One of the plaintiff's primary arguments against the defendants' motions is based on the relief sought in her Amended Complaint. The plaintiff seeks, primarily, monetary damages unavailable under the IDEA. This argument is no longer persuasive post-*Batchelor* and *Haddon*. *Batchelor* made clear that the relief sought does "not dictate the applicability of the IDEA." 759 F.3d at 277. What is determinative is "whether a non-IDEA claim falls within the scope of a complaint contemplated by the IDEA" and "'whether the parties could

18

have asserted the claims under IDEA.'" *Haddon Heights Bd. of Educ.*, 2016 WL 4394536, at *4 (quoting Batchelor, 759 F.3d  at 273). As explained, this court has found that the plaintiff could have asserted her claims under the IDEA. In addition, identical to the plaintiffs in *Batchelor*, the plaintiff in her Amended Complaint seeks "such other relief as the [c]ourt seems necessary and appropriate," (Doc. 13, at 13, 22). "Thus, it is untenable . . . to maintain that *all* of the remedies [sought] are unavailable under the IDEA." Batchelor, 759 F.3d at 276 (emphasis in original).

The plaintiff also argues that her federal claims are non-educational in nature because she alleges Austin was physically abused. The plaintiff argues that the IDEA administrative scheme cannot cure Austin's alleged harms because of the underlying non-educational nature of the harm. However, the court in *Batchelor* rejected a comparable argument made for ADA retaliation claims. *Id*. at 273 (rejecting the plaintiffs' contentions that the IDEA did not apply to a retaliation claim because the claim presented an issue of civil rights and not an educational issue). The label of a claim does not dictate the IDEA applicability; instead it is the theory of the grievance and the *potential* remedies available under the IDEA that makes the determination. *See Haddon Heights Bd. of Educ.*, 2016 WL 4394536, at *4; *Vicky M. v. Northeastern Educ. Intermediate Unit 19*, No. 3:06-CV-01898, 2007 WL 2844428, at *3 (M.D. Pa. Sept. 26, 2007).

Underlying all of the plaintiff's claims are Parry's usage of certain aversive behavioral techniques not approved under Pennsylvania's administrative implementation of the IDEA and a failure to review Austin's IEP to determine "the appropriateness and effectiveness of [these techniques]," (Doc. 13, ¶ 28, 30). In addition, the plaintiff's federal counts specifically allege that the defendants' failed to provide "a free appropriate public education" and "a safe and appropriate education atmosphere," (*Id*. at 52, 86). As a result, Austin is alleged to have suffered regression in his development, (*Id*. at 44). The plaintiff's own allegations are framed as a FAPE issue and her attempt to reframe the action to fall outside of the IDEA cannot succeed.[5]

_____

[5] The plaintiff relies heavily on the case of *M.C. ex rel. R.C. v. Perkiomen Valley School District*, Civ. Action No. 14–5707, 2015 WL 2231915 (E.D. Pa. May 11, 2015) for her argument. *M.C.* was decided prior to the Third Circuit's recent decision in *Haddon*. This court is now bound by the guidance provided by *Haddon*. The court is also not persuaded that M.C. is as analogous to the plaintiff's claims as the plaintiff argues.

*M.C.* involved allegations of sexual abuse by a co-student and the defendants failure to separate the co-student from the minor plaintiff. In *M.C.* the minor plaintiff alleged emotional harm alone, including trouble sleeping, bouts of crying, nightmares, feeling guilt and shame, wetting the bed, and feeling helpless. 2015 WL 2231915, at *7. Here, the alleged abuse is physical and developmental and is linked to disciplinary actions taken by school personnel. The plaintiff explicitly alleges that Austin suffered developmental harms, particularly speech regression, in addition to any physical or emotional harms, (*See* Doc. 13, at ¶ 44).

Contrary to the plaintiff's position, the plaintiff's allegations here are more analogous to other cases deeming physical abuse by school personnel within the IDEA scheme. *See, e.g., Vicky M. v. Northeastern Educ. Intermediate Unit 19*, No. 3:06-CV-01898, 2007 WL 2844428 (M.D. Pa. Sept. 26, 2007) (finding that plaintiffs' §1983 claim grounded in physical and emotional abuse allegations fell within the IDEA scheme); *Pullen v. Botetourt City Sch. Bd.*, Civ. No. 94-686-R, 1995 WL 738983, at *4 (W.D. Va. Feb. 13,

After evaluating the nature of the plaintiff's federal claims against the defendants, the court finds that they all "'palpably relate'" to the FAPE provision guaranteed by the IDEA. *Haddon Heights Bd. of Educ.*, 2016 WL 4394536, \*5 (quoting *Batchelor*, 759 F.3d at 273–74). The plaintiff was required to exhaust the administrative process provided by the IDEA since the claims are sufficiently based on Austin's alleged deprivation of a FAPE due to the use of improper disciplinary techniques not within his IEP. *See id.*, at \*1. Because the plaintiff has not exhausted her administrative remedies, this court is without jurisdiction over her claims. Accordingly, defendants' motions are granted and the plaintiff's federal claims alleging violations of the Fourteenth Amendment (Count I) and violations of Section 504 under the Rehabilitation Act (Count V) are dismissed without prejudice.

### D.   The Plaintiff's State Law Claims

Finally, the court will decline to exercise supplemental jurisdiction over the plaintiff's state law tort claims against defendant Parry individually. District courts may decline to exercise supplemental jurisdiction over a state law claim

---

1995) ("The use of discipline and in-class instruction are closely related in providing a child with a free appropriate education and are properly within the purview of the IDEA"). This court reached the same conclusion regarding the requirement of exhaustion in a recent, similar case alleging IDEA and Section 504 violations.  *See J.L. v. Wyoming Valley West Sch. Dist.*, Civ. Action No. 3:15–1750 (M.D. Pa. Aug. 29, 2016). Comparable to this case, *J.L.* involved allegations of improper physical restraints used on the disabled, minor plaintiff while being transported to and from school. This court required exhaustion in that case and reaches the same conclusion here.

21

if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. §1367(c)(3). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie–Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995)).

The court can find no justification for exercising jurisdiction over the plaintiff's assault, battery, IIED, and breach of fiduciary duty claims against Parry. The parties have not yet completed discovery and early attempts at mediation have been unfruitful, (*See* Doc. 28). Because the case was initially removed, the court will remand the plaintiff's remaining claims back to state court. There the plaintiff will be provided with adequate opportunity to continue litigating the remaining claims against Parry individually. Accordingly, Counts II, III, and IV of the plaintiff's Amended Complaint are remanded to the Court of Common Pleas of Lackawanna County for further proceedings.

## IV.   CONCLUSION

For the foregoing reasons, defendants NEIU's and Parry's motion to dismiss, (Doc. 16), and defendant LSD's motion to dismiss, (Doc. 15), are **GRANTED** pursuant to Rule 12(b)(1) because the plaintiff has failed to exhaust the administrative remedies provided to her by the IDEA. Having failed to vest this court with proper subject matter jurisdiction, the plaintiff's federal claims, Count I and Count V, are **DISMISSED WITHOUT PREJUDICE**.

The court declines to exercise supplemental jurisdiction over the plaintiff's state law claims of assault and battery (Count II), intentional infliction of emotional distress (Count III), and breach of fiduciary duty (Count IV) against defendant Parry individually. Accordingly, the remaining counts of the plaintiff's Amended Complaint are remanded  to the Court of Common Pleas of Lackawanna County for further proceedings. A separate order shall issue.

_s/ Malachy E. Mannion_
**MALACHY E. MANNION**
**United States District Judge**

**Dated: September 29, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-1986-01.wpd